**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

EDWARD TAUSSIG,

                Plaintiff,

vs.                                                      Case No. 8:16-cv-1060-T-JRK

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,

                Defendant.
_____/

## **OPINION AND ORDER**[2]

## **I. Status**

Edward Taussig ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work was initially a result of "[b]i-polar [disorder]," "severe anxiety," and "panic disorder." Transcript of Administrative Proceedings (Doc. No. 14; "Tr." or "administrative transcript"), filed July 15, 2016, at 79, 87, 103, 119; see also Tr. at 231. Later in the administrative process, Plaintiff reported a worsening of his mental condition, including suffering from "OCD and "ADHD," as well as physical issues of "bad back and knee pain due to arthritis." Tr. at 311, 320 (emphasis and capitalization omitted). On July 23, 2012, Plaintiff filed applications for DIB and SSI, alleging

---

     [1]     Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

     [2]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 13), filed July 15, 2016; Reference Order (Doc. No. 15), entered July 18, 2016.

an onset disability date of February 1, 2008. Tr. at 204-10 (DIB), 211-19 (SSI).[3] Plaintiff's applications were denied initially, see Tr. at 79-86, 101, 136-41 (DIB), 87-100, 102, 142-48 (SSI), and were denied upon reconsideration, see Tr. at 103-118, 130, 151-56, 162 (DIB), 119-29, 131, 157-61 (SSI).

On June 24, 2014, an Administrative Law Judge ("ALJ") held a hearing, during which the ALJ heard from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 48-78. The ALJ issued a Decision on September 3, 2014, finding Plaintiff not disabled through the date of the Decision. Tr. at 29-41.

The Appeals Council then received additional evidence in the form of a brief authored by Plaintiff's counsel. Tr. at 5-6; see Tr. at 355-75 (brief and attached exhibits). On March 25, 2016, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4, thereby making the ALJ's Decision the final decision of the Commissioner. On April 29, 2016, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff raises seven issues. See Plaintiff's Memorandum in Opposition to the Commissioner's Decision (Doc. No. 20; "Pl.'s Mem."), filed October 17, 2016, at 1-2. Three of the issues Plaintiff raises have to do with the residual functional capacity ("RFC") assigned by the ALJ and whether various portions of it and the corresponding hypothetical to the VE are supported by substantial evidence. See Pl.'s Mem. at 1-2 (labeled issues one, two, and five). The fourth issue is whether the ALJ erred in determining Plaintiff does not

---

[3] Although actually completed on August 8, 2012, see Tr. at 204, 211, the protective filing date of the applications is listed elsewhere in the administrative transcript as July 23, 2012, see Tr. at 29, 227, 318, 326.

meet or equal listing 12.06 of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 ("Listings"). See Pl.'s Mem. at 1-2 (labeled issue four). The fifth issue is whether the ALJ erred in determining that Plaintiff could return to his past relevant work given the demands of the work. See id. at 1 (labeled issue three). The sixth issue, while identified at the beginning of Plaintiff's memorandum, see id. at 2, is never actually argued by Plaintiff and is therefore deemed abandoned.[4] And, the seventh issue is whether the ALJ erred in discounting the opinions of two treating doctors regarding the effects of Plaintiff's mental disorders. See id. at 2 (labeled issue seven[5]). On December 15, 2016, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 21; "Def.'s Mem.") addressing the issues raised by Plaintiff.

After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned determines that the Commissioner's final decision is due to be reversed and remanded for further proceedings. Specifically addressing Plaintiff's seventh issue, the undersigned finds that the ALJ erred in evaluating the treating doctors' opinions. On remand, reevaluation of these opinions will likely impact all of the

---

[4] See Scheduling Order (Doc. No. 16), entered July 18, 2016 (requiring Plaintiff to "identify with particularity the grounds upon which the administrative decision is being challenged"; directing that "challenges must be supported by citation to the record of the pertinent facts and by citations of the governing legal standards"; and warning that "[a]ny contention for which these requirements are not met is subject to being disregarded for insufficient development"); Buttram v. Soc. Sec. Admin., Comm'r, 594 F. App'x 569, 572 (11th Cir. 2014) (stating that the Court need not "consider an issue raised only in passing or in a way that eschews legal argument or authority" (citing Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681 (11th Cir. 2014) (stating, "[w]e have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority"))).

[5] This issue is labeled number seven initially in Plaintiff's Memorandum. See Pl.'s Mem. at 2. Because Plaintiff did not develop argument with respect to the original issue number six, however, this issue is labeled number six in the argument section. See id. at 17.

other issues raised by Plaintiff in this appeal. For this reason, the Court need not address Plaintiff's remaining issues. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues because they were likely to be reconsidered on remand); Demenech v. Sec'y of the Dep't of Health & Human Servs., 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that certain arguments need not be addressed when the case would be remanded on other issues).

## II. The ALJ's Decision

When determining whether an individual is disabled,[6] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 31-40. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since February 1, 2008, the alleged onset date." Tr. at 31 (emphasis and citation omitted). At step

---

[6] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

-4-

two, the ALJ found that Plaintiff "has the following severe impairments: disorders of the spine and variously diagnosed affective and anxiety disorders associated with polysubstance addiction disorders." Tr. at 31 (emphasis and citation omitted). At step three, the ALJ ascertained that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 31 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following RFC:

[Plaintiff can] perform medium work as defined in 20 CFR [§§] 404.1567(c) and 416.967(c) except he is limited to performing work that involves understanding, remembering, and carrying out simple instructions, with only occasional interaction with the general public, supervisors, and co-workers, and in a work environment[] with no assembly-line pace.

Tr. at 34 (emphasis omitted). At step four, the ALJ found that Plaintiff "is capable of performing past relevant work as a Courier [because t]his work does not require performance of work-related activities precluded by [Plaintiff's RFC]."[7] Tr. at 38 (emphasis and citation omitted). Although not required, the ALJ made alternative findings at step five of the sequential inquiry. Tr. at 39-40. There, the ALJ considered Plaintiff's age ("54 years old, which is defined as an individual of advanced age, on the alleged disability onset date . . . [with a] subsequent[] changed age category to closely approaching retirement age"), education ("a least a high school education and is able to communicate in English"), work experience, and RFC, and relied on the testimony of the VE to find Plaintiff is capable of performing work that exists in significant numbers in the national economy. Tr. at 39

---

[7] Plaintiff also has past relevant work as a "Loader/Unloader of Printing Machine." Tr. at 39.

(citations omitted). Namely, the ALJ identified representative jobs as "Auto Detailer," "Horticultural Worker," and "Warehouse Worker." Tr. at 40. The ALJ concluded that Plaintiff "has not been under a disability . . . from February 1, 2008, through the date of th[e D]ecision." Tr. at 40 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

**IV. Discussion**

Plaintiff contends that the ALJ erred in discounting the opinions of treating physicians Mark Hager, M.D. and William Crockett, M.D. Pl.'s Mem. at 2, 17-20. In support, Plaintiff mainly argues that the ALJ erroneously relied upon the limited treatment history of both doctors and also on a lack of objective evidence to support Dr. Crockett's opinion. Id. at 17-20. Defendant counters that the ALJ provided good reasons, supported by substantial evidence, for discounting the doctors' respective opinions. Def.'s Mem. at 18-20.

The Regulations establish a "hierarchy" among medical opinions[8] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(e).

---

[8] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

With regard to a treating physician or psychiatrist,[9] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians or psychiatrists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v.

---

[9] A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(c), 416.927(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440. "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).

Drs. Crockett and Hager are employed by Manatee Glens Specialty Hospital and Outpatient Practice ("Manatee Glens"). See Tr. at 507-13 (notes signed by Dr. Hager); Pl.'s Mem. at 17 (stating that "Dr. Crockett and Dr. Hager were both associated with Manatee Glens"). Plaintiff was hospitalized at Manatee Glens from late June through early July 2012 upon "los[ing his] mind" during a period of having manic episodes. Tr. at 62; see Tr. at 507-13.

Prior to the Manatee Glens hospitalization, Plaintiff had spent some time in jail from sometime in 2011 to early 2012 as a result of "breaking into houses during a manic episode."

Tr. at 522 (Plaintiff's account of reason for being sent to jail), 388-422 (jail records). According to Plaintiff's testimony, however, he was ruled insane at the time of the offense(s) and released. Tr. at 68. During his stint in jail, Plaintiff was seen and treated by a number of mental health professionals. Tr. at 388-442, 456-76. There, Plaintiff was diagnosed with bipolar disorder. See, e.g., Tr. at 429, 431, 432.

After being released from jail, as noted, Plaintiff was hospitalized at Manatee Glens and again diagnosed with bipolar disorder. Tr. at 507-13. Following the hospitalization, Plaintiff has continued to be treated at Manatee Glens, the most recent treatment note in the administrative transcript being dated June 17, 2014. See Tr. at 519-60.

On February 20, 2013, Dr. Crockett completed a Mental Residual Functional Capacity Assessment ("Mental RFC"), Tr. at 537-39, and on an unknown date, he completed a Psychiatric Review Technique form ("PRT"), Tr. at 542. In the Mental RFC, Dr. Crockett opined Plaintiff is markedly limited in being able to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. at 537. As support, Dr. Crockett wrote that Plaintiff "can't stop talking" and is "easily distracted." Tr. at 537.[10] Dr. Crockett also opined Plaintiff is moderately limited in six other areas of social functioning. Tr. at 537. Dr. Crockett observed that Plaintiff "claims [his] job losses [are] due to being too slow, being late, [and] not concentrating on [the] job." Tr. at 537. Dr. Crockett wrote on the top of the form: "per client's statements to [p]ractitioner." Tr. at 537. And, on the bottom of the form, Dr. Crockett summarized Plaintiff's work history and opined Plaintiff

---

[10] As further support for Plaintiff's inability to complete a normal workweek, Dr. Crockett noted Plaintiff has physical problems of "his back kill[ing] him if he stands too long . . . [and] his knees bother him." Tr. at 537.

was "easily distracted," "hyperverbal," and had "interactions [with] the law in [the] past year due to behavior." Tr. at 538.

On the PRT, Dr. Crockett noted having treated or examined Plaintiff himself on three occasions: February 9, 2011; August 2, 2012; and January 23, 2013. Tr. at 542. Dr. Crockett then rendered opinions about Listing 12.06 (for anxiety-related disorders) that, if accepted by the ALJ, would have resulted in a finding that Plaintiff meets the listing. See Tr. at 542. He also made notes in blank areas of the form to support his opinions. Tr. at 542.

Dr. Hager completed a PRT on March 5, 2013. Tr. at 540-41. On the PRT, Dr. Hager noted having treated or examined Plaintiff himself on five occasions: February 17, 2011; August 22, 2012; January 23, 2013; February 20, 2013; and March 5, 2013. Tr. at 540. Dr. Hager rendered opinions about Listing 12.04 (for affective disorders) that, if accepted by the ALJ, would have resulted in a finding that Plaintiff meets the listing. See Tr. at 540-41. Like Dr. Crockett, Dr. Hager made notes in blank areas of the form to support his opinions. Tr. at 540-41. Further, Dr. Hager stated that he had read Plaintiff's medical records dated February 17, 2011 through March 5, 2013. Tr. at 541.

The ALJ assigned "little weight" to the opinions of Dr. Crockett and Dr. Hager, instead relying on earlier opinions of state agency psychologists Jennifer Meyer, Ph.D. (rendered on September 28, 2012, see Tr. at 98) and James L. Meyers, Psy.D. (rendered on January 4, 2013, see Tr. at 115). Tr. at 37. As rationale for discounting the opinions of Dr. Crockett and Dr. Hager, the ALJ wrote:

> [As to Dr. Crockett,] as he noted in the [Mental RFC] form, his assessment of limitations was based on [Plaintiff's] subjective statements, rather than his own objective findings. Moreover, he had a minimal history of treatment of [Plaintiff],

> having examined him only three times in a four year period; which [Plaintiff] testified having no recollection of even having met him.
>
> As for the statements made by Dr. [] Hager, the undersigned also gives little weight to this [PRT], as he only treated [Plaintiff] during his short hospitalization at Manatee Glens from June 28 through July 3, 2012. He has not examined or evaluated [Plaintiff] since his discharge from the crisis unit, which was confirmed by [Plaintiff's] testimony during the hearing.

Tr. at 37 (internal citations omitted).

The undersigned finds that the ALJ erred in assigning little weight to the opinions of Dr. Crockett and Dr. Hager because the reasons articulated for discounting the opinions do not amount to the requisite good cause. See, e.g., Phillips, 357 F.3d at 1240-41. As to Dr. Crockett, the ALJ did not even recognize that, in addition to completing the Mental RFC, Dr. Crockett completed the PRT. See Tr. at 37. Importantly, as explained above, Dr. Crockett opined in the PRT that Plaintiff's symptoms are severe enough that he meets Listing 12.06 (for anxiety-related disorders). See Tr. at 542. Regarding the reasons provided by the ALJ for discounting Dr. Crockett's opinion on the Mental RFC, the ALJ did correctly recount that the doctor's opinions on that form were based on Plaintiff's statements. Tr. at 37; see Tr. at 537 (Dr. Crockett wrote at the top of the form that it was "per client's statements to [p]ractitioner"). The PRT, however, does not appear to be based only on subjective statements. Rather, Dr. Crockett's notes on the form show that he considered Plaintiff's medical and legal history prior to rendering the opinion on the PRT. See Tr. at 542. And while the ALJ correctly stated that Dr. Crockett had only treated Plaintiff three times, the ALJ's statement of Plaintiff having "no recollection of even having met him" is not entirely accurate. See Tr. at 62 (Plaintiff testifying, in response to being asked about seeing Dr.

Crockett, that he knows he "talked to a doctor, or a couple doctors but I don't remember their names to be honest with you").

As to the ALJ's reasons regarding Dr. Hager's opinion, the ALJ's statement that Dr. Hager only treated Plaintiff during the hospitalization at Manatee Glens from June 28 through July 3, 2012, see Tr. at 37, is inconsistent with Dr. Hager's PRT, which states that Dr. Hager examined or treated Plaintiff no fewer than four times following the hospitalization, see Tr. at 540. While the notes in the administrative transcript from the time period following the hospitalization do not appear to have Dr. Hager's signature (instead mainly being signed by physician's assistants or advanced registered nurse practitioners), see Tr. at 545-60, the ALJ did not make this observation or otherwise resolve the possible conflict between Dr. Hager's representation on the form and the treatment notes. Further, while an ALJ is permitted to consider length of treatment as one of many factors in weighing a treating opinion, the ALJ's sole reason provided for discounting this important opinion was length of treatment—which, as explained, is infirm.

The ALJ did not articulate good cause to discount the opinions of Dr. Crockett and Dr. Hager. Thus, the matter is due to be reversed and remanded for further consideration of their opinions.

## V. Conclusion

After due consideration, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), and pursuant to § 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

   (A) Reevaluate the opinions of treating physicians, Dr. Hager and Dr. Crockett, stating with particularity the weight assigned and the reasons for that weight;

   (B) If appropriate, address the other issues raised by Plaintiff in this appeal; and

   (C) Take such other action as may be necessary to resolve this matter properly.

2. The Clerk is further directed to close the file.

3. In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** at Jacksonville, Florida on September 22, 2017.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of record